COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-366-CV
 
 
 
IN THE INTEREST OF M.C.C., A 
CHILD
 
 
 
------------
 
FROM THE 325TH DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        Appellant, 
the Office of Attorney General (OAG), appeals from a judgment ordering Appellee 
Toby Allen Collins to pay $19,531.33 in child support arrearages, an amount 
which includes prejudgment interest calculated at a rate of six percent simple 
interest per annum. In one issue, the OAG argues that the trial court erred in 
its interpretation and application of section 157.265 of the Texas Family Code, 
as amended in 2001, which decreased the rate for the accrual of prejudgment 
interest on unpaid child support from twelve percent per year to six percent. See 
Tex. Fam. Code Ann. § 157.265 
(Vernon 2002). We will affirm.
I. Background Facts and Procedural History
        The 
facts are undisputed. Appellee and Allyn Collins were divorced in 1993. Appellee 
and Allyn are the parents of M.C.C., who was born on January 7, 1981. The 
divorce decree ordered Appellee to pay $525 per month in child support, in 
$242.30 bi-weekly payments, beginning on July 30, 1993. Because Appellee had not 
fully paid his court-ordered child support, in December 2001, the OAG filed a 
motion for enforcement to confirm and reduce Appellee’s unpaid child support 
to a cumulative money judgment. This was the first enforcement action filed in 
the case. The OAG alleged that, since July 30, 1993, Appellee’s court-ordered 
child support had accrued in the amount of $47,678.18 and had accrued interest 
in the amount of $12,577.94. Further, the OAG alleged that Appellee had paid 
only $32,175.50 of the total amount, which left a total arrearage, including 
interest, of $28,080.62 as of November 25, 2001.
        On 
May 31, 2002, the Title IV-D master heard the OAG’s motion and, contrary to 
the OAG’s position, signed a proposed order confirming arrearages, including 
interest, in the amount of $19,531.33 as of April 30, 2002. In calculating this 
amount, the master calculated interest on the delinquent child support at the 
rate of six percent per annum from the date each payment first became due. The 
OAG filed a notice of appeal to the district court from the master’s 
recommendation, arguing that the Title IV-D master improperly applied the six 
percent interest rate.
        The 
only issue in dispute in the appeal to the trial court was whether the interest 
on Appellee’s unconfirmed arrearages ran at twelve percent or six percent 
before January 1, 2002, the date the statute reducing the interest rate from 
twelve percent to six percent went into effect. See id. § 157.265 
historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 
3(a), 2001 Tex. Gen. Laws 5294, 5295]. During the hearing, Appellee’s attorney 
acknowledged that the master “took the interest that was [alleged] in the 
AG’s pleadings and just cut it in half, reducing it from the [twelve] percent 
to the six percent.”
        On 
August 1, 2002, the trial court signed an order adopting the master’s proposed 
order as the order of the court. The court also signed an order confirming and 
reducing Appellee’s delinquent child support to a cumulative money judgment. 
Appellant filed a motion for new trial and requested findings of fact and 
conclusions of law. After a hearing, the trial court denied the motion for new 
trial and later filed findings of fact and conclusions of law. The trial court 
concluded that “the plain meaning of § 157.265 of the Texas Family Code means 
that any arrearages that are confirmed and reduced to a money judgment after the 
date of January 1, 2002, will be assessed interest at six percent (6%).” Thus, 
the court concluded that Appellee “is in arrears in the amount of $19,531.33 
with an interest rate of 6% per annum, payable in the amount of $525.00 each 
month beginning on the 1st day of June, 2002, payable on or before 
that date and on or before the same day each month thereafter until the 
arrearage is paid in full.“
II. Sole Issue: Construction of Section 157.265
        In 
this appeal, the OAG complains that the amendment to family code section 
157.265, which lowered the interest rate on delinquent child support from twelve 
to six percent, applies only to interest accruing after the Act’s effective 
date of January 1, 2002 and that interest on unconfirmed delinquent arrearages 
existing before January 1, 2002 accrued at the previous twelve percent rate up 
until that date. The OAG urges us to reverse the judgment and remand the case 
for a recalculation of arrearages because the trial court improperly reduced by 
half the unconfirmed interest that had accrued before January 1, 2002.
        Specifically, 
the OAG argues that we should apply the twelve percent rate to Appellee’s 
child support arrearages before January 1, 2002 and the six percent rate to 
those arrearages after January 1, 2002 because the legislature intended the 2001 
amendment to be applied prospectively only and because the Code Construction Act 
prescribes that it be so construed. Alternatively, the OAG asserts that, even if 
we were to determine that section 157.265 presents a clear textual indication of 
retroactive applicability, we cannot so construe the statute without violating 
family code section 157.262(a)’s prohibition of a trial court’s retroactive 
modification of the amount of child support arrearages and the Texas 
Constitution’s general prohibition against retroactive laws. For the following 
reasons, we reject the OAG’s construction of family code section 157.265.
III. Applicable Portions of Family Code Section 157
        Before 
addressing the interpretation of section 157.265, we think it is helpful to 
place that section in context with other pertinent provisions of the family 
code. Chapter 157 is titled “Enforcement,” and sections 157.261-157.269 
comprise the portion of chapter 157 concerning “Judgment[s] and Interest.” Tex. Fam. Code Ann. §§ 157.261-157.269 
(Vernon 2002 & Supp. 2004). With respect to interest, section 157.267 states 
that “[a]ccrued interest is part of the child support obligation and may be 
enforced by any means provided for the collection of child support.” Id. 
§ 157.267. At present, interest on child support accrues in the following 
manner:
 
(a) Interest accrues on the 
portion of delinquent child support that is greater than the amount of the 
monthly periodic support obligation at the rate of six percent simple interest 
per year from the date the support is delinquent until the date the support is 
paid or the arrearages are confirmed and reduced to money judgment.
 
(b) Interest accrues on child 
support arrearages that have been confirmed and reduced to money judgment as 
provided in this subchapter at the rate of six percent simple interest per year 
from the date the order is rendered until the date the judgment is paid.
 
(c) Interest accrues on a 
money judgment for retroactive or lump-sum child support at the annual rate of 
six percent simple interest from the date the order is rendered until the 
judgment is paid.
 
 
Id. § 157.265.
        Section 
157.263 authorizes an enforcement action to reduce unpaid child support to 
judgment and states in pertinent part:
 
(a) If a motion for 
enforcement of child support requests a money judgment for arrearages, the court 
shall confirm the amount of arrearages and render one cumulative money judgment.
 
(b) A cumulative money 
judgment includes:
 
(1) unpaid child support not 
previously confirmed;
(2) the balance owed on 
previously confirmed arrearages or lump sum or retroactive support judgments;
(3) interest on the 
arrearages; and
(4) a statement that it is a 
cumulative judgment.
 
 
Id. § 157.263. In 
rendering a money judgment, a trial court “may not reduce or modify the amount 
of child support arrearages.” Id. § 157.262(a). “A money judgment 
rendered as provided in this subchapter may be enforced by any means available 
for the enforcement of a judgment for debts.” Id. § 157.264(a). Thus, 
the trial court may render an order requiring that a child support obligor’s 
income be withheld or that he or she make periodic payments to the parent owed 
back child support. Id. § 157.262(b).
IV. History of Section 157.265
        As 
the Supreme Court of Texas stated in In re A.D., “Since 1974 the 
Legislature has amended the Family Code many times, adding and enhancing the 
methods courts may use to enforce their child-support orders. These new and 
improved enforcement mechanisms provide remedies for continuing violations of 
established duties.” 73 S.W.3d 244, 248 (Tex. 2002). This observation 
certainly holds true for family code section 157.265, which has been amended 
four times since it was enacted in 1991. See Tex. Fam. Code Ann. § 157.265.
        In 
1991, the Texas Legislature enacted former family code section 14.34 to govern 
the accrual of prejudgment interest on unpaid child support payments, providing 
that prejudgment interest accrued on unpaid child support obligations “at the 
rate of ten percent a year computed monthly.” Act of June 16, 1991, 72nd 
Leg., R.S., ch. 467, 1991 Tex. Gen. Laws 1693, 1693 (amended 1993, 1995, 1999, 
& 2001) (current version at Tex. Fam. 
Code Ann. § 157.265). This enactment codified Texas common law, which 
had “favored the award of prejudgment interest on awards for delinquent child 
support.” Castle v. Harris, 960 S.W.2d 140, 143 (Tex. App.—Corpus 
Christi 1997, no pet.); see, e.g., Medrano v. Medrano, 810 S.W.2d 426, 
428 (Tex. App.—San Antonio 1991, no writ) (holding that appellant was entitled 
to prejudgment interest on unpaid child support arrearages “as a matter of 
right” because such payments constituted “an ascertainable sum of money[,] . 
. . determined to have been due and payable at a date certain prior to 
judgment”) (citing Howze v. Surety Corp. of Am., 584 S.W.2d 263, 268 
(Tex. 1979)). One commentator noted that, in enacting a rate of ten percent per 
year computed monthly, “[t]he legislature has added another tool to the child 
caretakers in their plight to collect overdue support, but it has also added a 
computation problem which most family practitioners are not equipped to 
solve.” James E. Fordham, Jr. & Thomas H. Shelby, III, A Matter of 
Interest: Adding Interest to Child Support Arrears, 56 Tex. B.J. 664, 666 (1993).
        Consequently, 
the legislature amended section 14.34, effective September 1, 1993, to allow 
prejudgment interest to accrue “at the rate of 12 percent simple interest per 
year from the date the support is delinquent until the date the support is paid, 
regardless of whether the amount . . . had been reduced to judgment.” Act of 
May 15, 1993, 73rd Leg., R.S., ch. 150 §§ 1, 3, 1993 Tex. Gen. Laws 
302, 302 (amended 1995, 1999, & 2001) (current version at Tex. Fam. Code Ann. § 157.265). In 
place of former section 14.34, the legislature enacted section 157.265(a), which 
continued the prejudgment interest rate of twelve percent per year simple 
interest.[1]  Act of April 20, 1995, 74th 
Leg., R.S., ch. 20, §§ 1, 4, 1995 Tex. Gen. Laws 113, 184, 282 (amended 1999 
& 2001) (current version at Tex. Fam. 
Code Ann. § 157.265(a)). In 1999, the legislature amended section 
157.265(a) to clarify that “[i]nterest accrues on the portion of delinquent 
child support that is greater than the amount of the monthly periodic child 
support obligation at the rate of 12 percent simple interest per year . . . 
.” Act of June 18, 1999, 76th Leg., R.S., ch. 943, §1, 1999 Tex. 
Gen. Laws 3679 (amended 2001) (current version at Tex. Fam. Code Ann. § 157.265(a)).
        As 
one commentary notes, the twelve percent rate was apparently reasonable at the 
time it was enacted, but with time, the legislature determined that “imposing 
an interest rate on unpaid child support arrears far beyond market rate is 
counterproductive,” resulting only in “a greater level of noncompliance.” John J. Sampson et al., Texas Family Code 
Annotated § 157, Introductory Cmt., 677 (13th ed. 2003). In 
other words, because the high interest rate was discouraging, rather than 
promoting, compliance with child support orders, the legislature again amended 
section 157.265 in the 2001 regular session, decreasing the rate of interest 
accruing on child support payments from twelve percent to six percent simple 
interest per year. Tex. Fam. Code Ann. 
§ 157.265(a).[2]  Section 3 of the 2001 enabling 
legislation concerns the effective date of the statute and provides for the 
determination of the applicable rate as follows:
 
(a) This Act takes effect 
January 1, 2002.
 
(b) The change in law made by 
this Act applies only to:
 
(1) a child support payment 
that becomes due on or after the effective date of this Act; and
 
(2) unpaid child support that 
became due before the effective date of this Act and for which a court has not 
confirmed the amount or arrearages and rendered a money judgment.
 
(c) A money judgment for child 
support rendered before the effective date of this Act is governed by the law in 
effect on the date the judgment was rendered, and the former law is continued in 
effect for that purpose.
 
 
Id. § 157.265 
historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 
3, 2001 Tex. Gen. Laws 5294, 5295]. This appeal concerns the construction of 
subsections 3(a) and (3)(b)(2). See id.
V. Interpreting Section 157.265
        Because 
construction of section 157.265 presents a question of law, we review this issue 
under a de novo standard. See Johnson v. City of Fort Worth, 774 S.W.2d 
653, 656 (Tex. 1989) (holding statutory construction is a question of law); Rogers 
v. City of Fort Worth, 89 S.W.3d 265, 274 (Tex. App.—Fort Worth 2002, no 
pet.). We are “not to second-guess the policy choices that inform our statutes 
or to weigh the effectiveness of their results; rather, our task is to interpret 
those statutes in a manner that effectuates the Legislature’s intent.” McIntyre 
v. Ramirez, 109 S.W.3d 741, 748 (Tex. 2003); see Phillips v. Beaber, 
995 S.W.2d 655, 658 (Tex. 1999); In re E.D.L., 105 S.W.3d 679, 685 (Tex. 
App.—Fort Worth 2003, pet. denied).
        A. Did the Legislature Expressly Make Section 157.265 
Retrospective?
        In 
determining the legislature’s intent, we first look to the statute’s plain 
and common meaning and presume that the legislature intended the plain meaning 
of its words. Tex. Gov’t Code Ann. 
§ 311.011(a) (Vernon 1998) (“Words and phrases shall be read in context and 
construed according to the rules of grammar and common usage.”); Fleming 
Foods v. Rylander, 6 S.W.3d 278, 282 (Tex. 1999). Further, in construing a 
statute, regardless of whether the statute is ambiguous, we may consider among 
other matters the: (1) object sought to be attained; (2) circumstances under 
which the statute was enacted; (3) legislative history; (4) common law or former 
statutory provisions, including laws on the same or similar subjects; (5) 
consequences of a particular construction; (6) administrative construction of 
the statute; and (7) title (caption), preamble, and emergency provision. Tex. Gov’t Code Ann. § 311.023; see 
also Brown v. Owens, 674 S.W.2d 748, 750 (Tex. 1984) (In determining the 
legislature’s intent, “we must consider the entire Act, its nature and 
object, and the consequences which follow from each construction.”).
        “A 
statute is presumed to be prospective in its operation unless expressly made 
retrospective.” Tex. Gov’t Code Ann. 
§ 311.022; see also Tex. Const. 
art. I, § 16 (“No . . . retroactive law . . . shall be made.”). Similarly, 
the Supreme Court of Texas states the rule regarding retrospective application 
of statutory provisions as follows: “[S]tatutes [will not be applied] 
retrospectively [unless] it appears by fair implication from the language used 
that it was the intention of the Legislature to make it applicable to both past 
and future transactions.” State v. Humble Oil & Refining Co., 141 
Tex. 40, 169 S.W.2d 707, 708-09 (1943); see Rice v. Louis A. Williams & 
Assoc., Inc., 86 S.W.3d 329, 335 (Tex. App.—Texarkana 2002, pet. denied).
        According 
to section 3(a) of the historical and statutory notes, the effective date of the 
2001 amendment to section 157.265 is January 1, 2002. See Tex. Fam. Code Ann. § 157.265 
historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 
3(a), 2001 Tex. Gen. Laws 5294, 5295]. Section 3(b) identifies the two 
categories of child support payments to which the new six percent simple 
interest rate applies: (1) “child support that becomes due on or after [January 
1, 2002]” and (2) “unpaid child support that became due before 
[January 1, 2002] and for which a court has not confirmed the amount of 
arrearages and rendered a money judgment.” See Tex. Fam. Code Ann. § 157.265 
historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 
3(b), 2001 Tex. Gen. Laws 5294, 5295] (emphases added). By stating that “[t]he 
change in law made by this Act applies only to” these two categories of 
child support payments, the legislature indicated its intent to limit the 
applicability of the new six percent rate to these two classes of child support 
payments. See id. (emphasis added).
        The 
OAG contends that the six percent interest rate on delinquent child support 
applies only to interest accruing after the Act’s effective date of January 1, 
2002. In support of this position, the OAG cites the Code Construction Act’s 
presumption against a statute’s retroactive application and argues that 
section 157.265 does not expressly state that it retroactively changes the rate 
on all unconfirmed arrearages owed prior to January 1, 2002. See Tex. Gov’t Code Ann. § 311.022.
        To 
further its argument, the OAG cites Coastal Industrial Water Authority v. 
Trinity Portland Cement Division, General Portland Cement Co. for the 
proposition that an act changing a statutory interest rate is presumed to be 
prospective, absent a clear textual indication of retroactivity. 563 S.W.2d 916, 
918-19 (Tex. 1978) (construing 1975 version of post-judgment interest statute). 
We do not find the OAG’s reliance on Coastal to be persuasive. Coastal 
states, “[T]he provision in the amended statute that judgments shall bear 
interest at the rate of nine percent ‘from and after the date of such 
judgment’ plainly suggests that the rate shall be applied prospectively 
only.” 563 S.W.2d at 918 (emphasis added). While Coastal concerned the 
1975 amendment to the general post-judgment interest statute increasing the 
interest rate from six percent to nine percent, the language of the 1975 statute 
at issue in Coastal differs significantly from the language at issue in 
this appeal. Id. at 916-17; see also Tex. Fin. Code Ann. § 304.302 (Vernon 
Supp. 2004) (stating judgment interest chapter in the finance code is 
inapplicable to interest accruing under family code section 157.265). Thus, Coastal 
does not aid us in our interpretation of the language found in section 3(b)(2) 
of section 157.265’s historical and statutory notes. See Tex. Fam. Code Ann. § 157.265 
historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 
3(b)(2), 2001 Tex. Gen. Laws 5294, 5295].
        The 
OAG also refers us to In re A.R.J., in which the Dallas Court of Appeals 
addressed the exact issue presenting itself in the case in hand. 97 S.W.3d 833, 
834 (Tex. App.—Dallas 2003, no pet.). The court in A.R.J. stated, 
“Clearly, under a plain reading of section 3(b)(2), the six percent interest 
rate applies to unconfirmed arrears prior to January 1, 2002.” Id. 
Despite this statement, the court concluded that nothing in section 3 of the 
historical and statutory notes “suggest[s] that the legislature intended the 
changed rate to apply retroactively.” Id. at 835. Consequently, the 
court held that “unpaid child support obligations that have not been confirmed 
and reduced to judgment as of January 1, 2002 are subject to the twelve percent 
interest rate until January 1, 2002,” at which time “interest begins 
accruing on those unpaid child support obligations at the new six percent 
rate.” Id.
        As 
Appellee points out in his brief, the courts of appeals in Waco and 
Amarillo—the only other courts to address the precise issue presented in this 
case—have both rejected A.R.J.’s reasoning. See In re A.B.L., 
No. 10-02-267-CV, 2003 WL 21470071, at *1 (Tex. App—Waco June 25, 2003, no 
pet.) (mem. op.) (not designated for publication); In re Hurd, No. 
07-02-0334-CV, 2003 WL 1961142, at *2 & n.1 (Tex. App.—Amarillo Apr. 28, 
2003, no pet.) (not designated for publication). In Hurd, the Amarillo 
court, in concluding the legislature did not intend a retroactive application of 
section 157.265, observed that A.R.J. failed to “mention the passage in 
the enabling legislation stating that the change ‘applies to . . . unpaid 
child support that became due before [January 1, 2002] and for which a court has 
not confirmed the amount of arrearages and rendered a money judgment.’” 2003 
WL 1961142, at *2 n.1; see Tex. 
Fam. Code Ann. § 157.265 historical note [Act of May 18, 2001, 77th 
Leg., R.S., ch. 1491, § 3(b)(2), 2001 Tex. Gen. Laws 5294, 5295].
        Further, 
Hurd criticizes A.R.J. for “read[ing] into the enabling 
legislation wording that divided unpaid child support into different categories, 
those categories being unpaid support that accrued before January 1, 2002, and 
unpaid support that accrued after January 1st,” with the former accruing 
interest at twelve percent and the latter at six percent, which is the same 
interpretation by the OAG in this case. 2003 WL 1961142, at *2. Instead, both A.B.L. 
and Hurd conclude that section 157.265 as written applies 
retrospectively. A.B.L., 2003 WL 21470071, at *1; Hurd, 2003 WL 
1961142, at *2. We agree that A.R.J. ignored the plain, express language 
of section 3(b)(2), which demonstrates the legislature’s intent to have 
retrospective application of section 157.265.
        Neither 
A.B.L. nor Hurd delve into the legislative history behind the 2001 
amendment to section 157.265, but the OAG argues that legislative history 
supports the view that section 157.265 is “purely prospective.” We disagree. 
Senate Bill 776 was introduced as an Act “relating to the collection of 
accrued interest on child support payments.” Tex. S.B. 776, 77th 
Leg., R.S. (2001). After the bill moved from the Senate to the House, it emerged 
from the House Juvenile Justice and Family Issues Committee revamped as an Act 
“relating to the accrual of interest on child support.” Tex. Comm. 
Substitute S.B. 776, 77th Leg., R.S. (2001). The text of Committee 
Substitute S.B. 776 provided that
 
[t]he change in law made by 
Section 157.265, Family Code, as amended by this Act, applies only to a child 
support payment that becomes due on or after the effective date of this Act. A 
child support payment that became due before the effective date of this Act is 
governed by the law in effect on the date the child support payment became due, 
and the former law is continued in effect for that purpose.
 
 
Id. Committee 
Substitute S.B. 776 stated, “This Act takes effect January 1, 2002. Id.
        Representative 
Toby Goodman, who sponsored Committee Substitute S.B. 776 offered amending 
language to the bill on May 17, 2001:
 
The change in law made by 
Section 157.265, Family Code, as amended by this Act, applies only to a child 
support payment that becomes due or money judgment for child support that is 
rendered on or after the effective date of this Act. A child support payment 
that became due or a money judgment for child support that was rendered before 
the effective date of this Act is governed by the law in effect on the date the 
child support payment became due or the money judgment was rendered, and the 
former law is continued in effect for that purpose.
 
 
Tex. Comm. Substitute S.B. 
776, 77th Leg., R.S. (2001) (May 17, 2001 amendment by Goodman) 
(available at http://www.capitol.state.tx.us). At the time Representative 
Goodman offered the amendment, he stated that it “clears up some language in 
the effective date.” House Debate on S.B. 776, 77th Leg., R.S. 
(available at http://www.house.state.tx.us/media/chamber/77.htm, House Archived 
Chamber Broadcasts Part 4, at 13:18-14:08, May 17, 2001). The amendment was 
adopted without further comment or objection. Id.
        On 
May 18, 2001, Representative Goodman offered another amendment to Committee 
Substitute S.B. 776, which contains the language enacted in section 157.265’s 
historical and statutory notes. Tex. Comm. Substitute S.B. 776, 77th 
Leg., R.S. (2001) (May 18, 2001 amendment by Goodman) (available at http://www.capitol.state.tx.us); 
see Tex. Fam. Code Ann. § 
157.265 historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 
1491, § 3, 2001 Tex. Gen. Laws 5294, 5295]. Representative Goodman stated at 
the time he offered the second amendment on the House floor that “this clears 
up the effective date that was changed yesterday and was changed before, so the 
Attorney General’s office can calculate interest.” House Debate on S.B. 776, 
77th Leg., R.S., (available at http://www.house.state.tx.us/media/chamber/77.htm, 
House Archived Chamber Broadcasts Part 2, at 1:52:31-1:53:22, May 18, 2001). 
This amendment likewise was adopted without further comment or objection. Id.
        The 
enacted version of S.B. 776 expressly states that the new six percent interest 
rate applies to “unpaid child support that became due before [January 
1, 2002] and for which a court has not confirmed the amount of arrearages and 
rendered a money judgment”; whereas, the express language in both the 
original version of Committee Substitute S.B. 776 and the version adopting 
Representative Goodman’s first amendment would not have subjected this 
category of child support to the new six percent rate. Tex. Fam. Code Ann. § 157.265 
historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 
3(b)(2), 2001 Tex. Gen. Laws 5294, 5295] (emphases added). We must presume that 
the legislature chose its words carefully, recognizing that every word in a 
statute was included for some purpose and that every word excluded was omitted 
for a purpose. In re M.J.M.L., 31 S.W.3d 347, 354 (Tex. App.—San 
Antonio 2000, pet. denied); Renaissance Park v. Davila, 27 S.W.3d 252, 
256 (Tex. App.—Austin 2000, no pet.). Thus, upon a close examination of the 
evolution of the Act’s language, we think section 157.265, as enacted, 
expresses the legislature’s intent to subject child support arrearages 
existing before January 1, 2002 that are not confirmed and reduced to a money 
judgment until on or after that date to the six percent interest rate.
        The 
OAG directs us to other legislative history, namely the bill analysis of section 
157.265, as enacted, which reads in relevant part as follows:
 
SECTION 1.Amends Section 
157.265, Family Code, to reduce the rate of accrual of interest on child support 
arrearage from 12 to six percent simple interest per year.
 
. . . . 
SECTION 3.Effective date: 
January 1, 3003. [sic]
Makes Application of this Act 
prospective.

 
Senate Research Center, Bill Analysis, 
Tex. S.B. 776, 77th Leg., R.S. (2001). The bill analysis, however, 
does not analyze section 3(b)(2)’s clear and express statement that the six 
percent rate applies to “unpaid child support that became due before 
[January 1, 2002] and for which a court has not confirmed the amount of 
arrearages and rendered a money judgment.” Id.; Tex. Fam. Code Ann. § 157.265 
historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 
3(b)(2), 2001 Tex. Gen. Laws 5294, 5295] (emphasis added).
        In 
short, we are not persuaded that this terse and largely unexplained shard of 
legislative history clarifies or better expresses the legislature’s intent 
than the express language of section 157.265 and its historical and statutory 
notes, as enacted by the 77th Legislature. To the extent the Senate 
Research Center Bill Analysis seemingly conflicts with the express language of 
the statute, the enacted language controls. See, e.g., Robinson v. Budget 
Rent-A-Car Sys., Inc., 51 S.W.3d 425, 434 (Tex. App.—Houston [1st 
Dist.] 2001, pet. denied) (stating that it is inappropriate to use legislative 
history in determining legislative intent when such legislative history “would 
alter and disregard the express terms of a clear and unambiguous code 
provision”).
        From 
the plain language of section 3(b)(2), we conclude that the legislature clearly 
stated its intent to apply the reduced six percent prejudgment interest rate to 
arrearages existing before January 1, 2002 that had not been confirmed and 
reduced to a money judgment as of that date. We agree with Hurd that, in 
reading section 3’s language in context, giving effect to its plain meaning, 
“one cannot but read it as fairly implying that the reduction was to apply to 
both past and future arrearages as long as they had yet to be confirmed and 
reduced to an actual money judgment.” 2003 WL 1961142, at *2; see Humble 
Oil & Refining Co., 141 Tex. 40, 169 S.W.2d at 708-09; Rice, 86 
S.W.3d at 335; see also A.B.L., 2003 WL 21470071, at *1. We hold that, as 
written, section 157.265 expresses the legislature’s intent that it be applied 
retrospectively. See A.B.L., 2003 WL 21470071, at *1; Hurd, 
2003 WL 1961142, at *2.

        B. 
    Can Section 157.265 Be Construed to Apply 
Retrospectively Without Violating Other Provisions in the Family Code or Article 
I, Section 16 of the Texas Constitution?

        Having 
determined that section 157.265 expresses legislative intent of retrospective 
applicability, we must determine whether such a construction can be given to 
section 157.265, in light of statutory and constitutional provisions. “In 
enacting a statute, it is presumed that: (1) compliance with the constitutions 
of this state and the United States is intended; (2) the entire statute is 
intended to be effective; (3) a just and reasonable result is intended; (4) a 
result feasible of execution is intended; and (5) public interest is favored 
over any private interest.” Tex. 
Gov’t Code Ann. § 311.021. The OAG argues that retrospective 
application of section 157.265 conflicts with the Texas Family Code, violates 
article I, section 16 of the Texas Constitution, and leads to foolish or absurd 
results. See id. § 311.021(1)-(3). We will address each of these 
arguments in turn.
                1.     Conflicts 
with the Family Code?
        Because 
we determine legislative intent concerning money judgments and interest from the 
entire Act, and not just from isolated portions of the Act, we must examine 
other pertinent sections of the family code. See Tex. Fam. Code Ann. §§ 
157.261-157.269; State Dep't of Highways & Pub. Transp. v. Gonzalez, 
82 S.W.3d 322, 327 (Tex. 2002). Family Code section 157.261(a) states, “A 
child support payment not timely made constitutes a final judgment for the 
amount due and owing, including interest as provided in this chapter.” Tex. Fam. Code Ann. § 157.261(a). 
Section 157.267 provides, “Accrued interest is part of the child support 
obligation and may be enforced by any means provided for the collection of child 
support,” while section 157.265 establishes the applicable interest rates to 
delinquent child support. Id. §§ 157.265, 157.267.
        The 
OAG first argues that we should not interpret section 157.265 to apply 
retroactively because such a construction would conflict with sections 
157.262(a) and 156.401(b) of the family code. See Tex. Gov’t Code Ann. § 311.021(2); In 
re Azle Manor, Inc., 83 S.W.3d 410, 414 (Tex. App.—Fort Worth 2002, orig. 
proceeding [mand. denied]) (stating that statutes appearing to be in conflict 
should be read to “give effect to both by assigning each a meaning that will 
permit each to stand”). Section 157.262(a) states that “[e]xcept as provided 
by this section, . . . in rendering a money judgment, the court may not reduce 
or modify the amount of child support arrearages.” Tex. Fam. Code Ann. § 157.262(a). 
Section 156.401(b) provides that a “support order may be modified only as to 
obligations accruing after the earlier of: (1) the date of the service of 
citation; or (2) an appearance in the suit to modify.” Id. § 
156.401(b).
        Specifically, 
the OAG asserts that a retroactive application of section 157.265 conflicts with 
section 157.262(a) by requiring courts to reduce interest that has previously 
accrued on child support arrearages that became due before the effective date of 
the statute. The OAG also contends that such a construction conflicts with 
section 156.401(b) by thus requiring a trial court to “modify” the interest 
portion of a delinquent child support obligation that had accrued before the 
date of service or an appearance in a modification suit.
        We 
are not persuaded by the OAG’s argument that a retroactive construction of 
section 157.265 conflicts with either section 157.262(a) or section 156.401(b). Tex. Fam. Code Ann. §§ 156.401(b), 
157.262(a), 157.265. The issue before us is not whether the trial court 
impermissibly violated section 157.262(a) by calculating interest based on the 
reduced interest rate. Id. § 157.262(a). Instead, we must determine 
whether the legislature, as it did in 2001, can reduce or otherwise 
modify the interest rate that trial courts are bound to follow in computing 
interest on child support arrearages.
        With 
respect to calculating and rendering a cumulative judgment, “the trial court 
acts as ‘a mere scrivener’ who mechanically tallies the amount of 
arrearages.” In re M.C.R., 55 S.W.3d 104, 109 (Tex. App.—San Antonio 
2001, no pet.) (citing Williams v. Patton, 821 S.W.2d 141, 153 (Tex. 
1991) (Phillips, C.J., dissenting)). The trial court has a ministerial duty to 
confirm the amount of the arrearages plus accrued interest under the applicable 
statutorily-provided interest rate and render a cumulative money judgment in the 
total amount due and owing to the obligee. Id. at 110. In rendering a 
money judgment, a court does not have discretion to increase or reduce the 
arrearages or the interest. Tex. Fam. 
Code Ann. § 157.262(a); see also M.C.R., 55 S.W.3d at 109-110 
(holding trial court abused its discretion by only awarding half of the amount 
of accrued interest owed by the obligor). In this case, the trial court 
did not reduce or modify the amount of interest that had accrued on Appellee’s 
delinquent child support; rather, in confirming the amount of the arrearage plus 
the accrued interest, it applied the legislatively-decreased six percent 
interest rate to the amount of the arrearages.
        Likewise, 
a retroactive construction of section 157.265 does not conflict with section 
156.401(b). Section 156.401(b) governs the modification of a trial court’s 
order(s) concerning, among other things, child support. See Tex. Fam. Code Ann. § 156.401(b). 
Section 157.263 permits a trial court to enforce a child support order by 
confirming the amount of child support arrearages, including interest, and 
rendering a cumulative money judgment. Id. § 157.263. Thus, a trial 
court does not modify a previous SAPCR order under section 156.401(b) when it 
renders a money judgment under section 157.263. Id. §§ 156.401(b), 
157.263, 157.265.
        In 
this case, the trial court did not modify its 1993 SAPCR order concerning 
Appellee’s child support obligation when it reduced Appellee’s unpaid child 
support payments, including interest, to a money judgment. Rather, the trial 
court applied the reduced six percent interest rate that the 2001 Legislature 
made applicable to “unpaid child support that became due before 
[January 1, 2002] and for which a court has not confirmed the amount of 
arrearages and rendered a money judgment.” See Tex. Fam. Code Ann. § 157.265 
historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 
3(b), 2001 Tex. Gen. Laws 5294, 5295] (emphases added).
                2.     Conflict 
with the Texas Constitution?
        On 
the issue of whether the legislature can modify the rate of interest applicable 
to pre-existing child support arrearages—which the 2001 Legislature did by 
lowering the twelve percent rate to six percent—the OAG asks us to examine 
section 157.265 in light of article I, section 16 of the Texas Constitution. See 
Tex. Const. art. I, § 16; Tex. Fam. Code Ann. §157.265. In Ex 
parte Abell, the Supreme Court of Texas wrote,

        It 
is well settled in this state that laws may not operate retroactively to deprive 
or impair vested substantive rights acquired under existing laws, or create new 
obligations, impose new duties, or adopt new disabilities in respect to 
transactions or considerations past. On the other hand, no litigant has a vested 
right in a statute or rule which affects remedy or is procedural in nature and 
which affects no vested substantive right. Changes in such statutes or rules are 
considered remedial in nature and have been held not to violate the provisions 
of Article 1, sec. 16 of the Constitution.
 
613 S.W.2d 255, 260 (Tex. 
1981) (citations omitted); see Tex. 
Const. art. I, § 16; Subaru of Am., Inc. v. David McDavid Nissan, Inc., 
84 S.W.3d 212, 219-20 (Tex. 2002); see also In re Tex. Dep’t of 
Protective & Regulatory Servs., 71 S.W.3d 446, 450 (Tex. App.—Fort 
Worth 2002, orig. proceeding).
        Section 
157.261 permits a child support obligee to seek a money judgment for unpaid 
child support:

(a) A child support payment 
not timely made constitutes a final judgment for the amount due and owing, 
including interest as provided in this chapter.
 
(b) For the purposes of this 
subchapter, interest begins to accrue on the date the judge signs the order for 
the judgment unless the order contains a statement that the order is rendered on 
another specific date.

 
Tex. Fam. Code Ann. § 157.261. The OAG 
argues that because accrued interest is part of the child support obligation and 
because a child support payment not timely made is deemed to be a “final 
judgment” under section 157.261(a) for the amount due and owing, including 
interest, the right to accrued interest on unpaid child support is a statutorily 
vested right. See id. §§ 157.261(a), 157.265, 157.267. Accordingly, the 
OAG argues that a retroactive construction of section 157.265 would run afoul of 
article I, section 16 by depriving a child support obligee of a vested right to 
the interest that had accumulated at the former twelve percent interest rate.
        Despite 
section 157.261(a), the OAG concedes that a delinquent child support obligation 
is not a “court’s final judgment” because, otherwise, there would be no 
reason for family code section 157.263, which provides for confirming arrearages 
and reducing them to a cumulative money judgment by a court. See id. §§ 
157.261(a), 157.263. However, the OAG directs us to Gard v. Gard, in 
which the Supreme Court of Texas stated,
 
[G]enerally speaking, where a 
decree is rendered for alimony and is made payable in future instalments, the 
right to such instalments becomes absolute and vested upon becoming due, and is 
therefore protected by the full faith and credit clause, provided no 
modification of the decree has been made prior to the maturity of the 
instalments.

150 Tex. 347, 241 S.W.2d 618, 
619 (1950) (citing Sistare v. Sistare, 218 U.S. 1, 16-17, 30 S. Ct. 682, 
686 (1910)). Applying Sistare in the context of child support, Gard 
held that, under Idaho law, once the father allowed his child support payments 
to become delinquent, “[t]hey became the property of the [mother].” Id. 
at 620. Gard stated, “When the installments matured, her right thereto 
became ‘absolute, vested, and protected by the full faith and credit clause of 
the federal constitution.’” Id. at 620. Gard, however, 
addresses only delinquent child support obligations and does not speak to the 
issue of statutorily-imposed prejudgment interest accruing on the delinquent 
child support obligations or whether, even though the obligations themselves 
become vested rights, prejudgment interest accruing at a particular rate on the 
amount due also becomes a vested right of the child support obligee.
        Two 
cases the OAG cites that concern interest accruing on child support arrearages 
as a vested right are A.B.L. and Hurd. While A.B.L. and Hurd 
concluded that section 157.265 is retrospective as written, both declined to so 
construe that section, holding that such a construction would violate article I, 
section 16 of the Texas Constitution.[3]  A.B.L., 
2003 WL 21470071, at *1-2; Hurd, 2003 WL 1961142, at *2-3. Hurd 
examined family code sections 157.261(a) and 157.265 and observed that “the 
legislature has categorized the status of the delinquent payment as delinquent 
and due at the instant it becomes unpaid and memorialized the liability, 
including interest thereon, in a final judgment.” 2003 WL 1961142, at *2-3. 
Thus, Hurd concluded that the legislature “effectively vested the 
beneficiary of the support payment with the right to receive the amount due, 
including interest, at the instant it went unpaid. Id. at *3.
        While 
Hurd declined to address “whether in using the term ‘final 
judgment’ [in section 157.261(a)] the legislature sought to perform the 
inherently judicial function of adjudicating a dispute,” the court reasoned 
that “because the right to delinquent child support payments, including 
interest thereon, is incorporated into a final judgment through legislative 
fiat, then, logically, the right to the payment and interest thereon vests at 
the instant the delinquency arises.”  Id. at *2-3 & n.2.  
Hurd therefore declined to construe section 157.265 retroactively so as 
to avoid a construction of the statute that the court reasoned would deprive 
beneficiaries of their vested rights.  Id. at *3; see also A.B.L., 
2003 WL 21470071, at *1-2 (following Hurd’s conclusion that “interest 
accruing on child support payments constitutes a vested right”). Consequently, 
both A.B.L. and Hurd held that trial courts are obligated to use 
the former twelve percent rate when calculating the interest accruing upon 
pre-January 1, 2002 delinquencies and the six percent rate to delinquencies 
accruing thereafter. 2003 WL 21470071, at *2; 2003 WL 1961142, at *3.
        Appellee 
counters these responses, arguing that section 157.265 does not involve a vested 
right for the child support obligee but, as described by the Corpus Christi 
Court of Appeals, “sets up procedural guidelines that dictate the rate and 
manner in which interest applies to child support arrearages.” In re W.G.S., 
107 S.W.3d 624, 630 (Tex. App.—Corpus Christi 2002, no pet.). Further, 
Appellee argues that the interest provision found in chapter 157 is but one of 
the enforcement tools to be utilized in the enforcement of child support orders. 
Thus, Appellee argues that, contrary to the holdings in A.B.L. and Hurd, 
a retroactive construction of section 157.265 does not violate the Texas 
Constitution. See A.D., 73 S.W.3d at 248 (“[T]he courts of appeals have 
consistently held that the constitutional ban on retroactive laws does not 
preclude applying new enforcement tools to old support orders.”) (citing Harrison 
v. Cox, 524 S.W.2d 387, 391-92 (Tex. Civ. App.—Fort Worth 1975, writ 
ref’d n.r.e.) (affirming arrearage judgment including payments due before 
effective date of statute authorizing cumulative judgments)). Appellee maintains 
that, because section 157.265 is a remedial and corrective law, we should give 
meaning to the plain, express language in section 3(b)(2) as ascribed by the 
legislature and affirm the trial court’s application of the six percent rate 
to all of Appellee’s unconfirmed arrearages, even payments that had become 
delinquent before January 1, 2002.
        In 
its reply brief, the OAG cites Votzmeyer v. Votzmeyer, in which the 
Corpus Christi Court of Appeals stated that “judgment interest rates are a 
matter of substantive law.” 964 S.W.2d 315, 321 (Tex. App.—Corpus Christi 
1998, no pet.); see also Bott v. Am. Hydrocarbon Corp., 458 F.2d 229, 231 
(5th Cir. 1972) (stating that, under Texas choice of law rules, “Texas 
considers interest damages a substantive matter controlled by the law of the 
state where the cause of action arose”); Corrosion Rectifying Co. v. 
Freeport Sulphur Co., 197 F. Supp. 291, 293 (S.D. Tex. 1961) (same). The OAG 
also directs us to a portion of the United State’s Supreme Court decision in Morley 
v. Lake Shore and Michigan Southern Railway Co., 146 U.S. 162, 168-69, 13 S. 
Ct. 54, 56-57 (1892). In Morley, the Supreme Court applied New York law 
and held that post-judgment interest was statutory and therefore subject to 
prospective changes in rates by the state legislature:
 
After the cause of action, 
whether a tort or a broken contract, not itself prescribing interest till 
payment, shall have been merged into a judgment, whether interest shall accrue 
upon the judgment is a matter not of contract between the parties, but of 
legislative discretion, which is free, so far as the Constitution of the United 
States is concerned, to provide for interest as a penalty or liquidated damages 
for the non-payment of the judgment, or not to do so.  When such provision 
is made by statute, the owner of the judgment is of course entitled to the 
interest so prescribed until payment is received, or until the State shall, in 
the exercise of its discretion, declare that such interest shall be changed or 
cease to accrue.  Should the statutory damages for non-payment of a 
judgment be determined by a State, either in whole or in part, the owner of a 
judgment will be entitled to receive and have a vested right in the 
damages which shall have accrued up to the date of the legislative change; but 
after that time his rights as to interest as damages are, as when he first 
obtained his judgment, just what the Legislature chooses to declare.  He 
has no contract whatever on the subject with the defendant in the judgment, and 
his right is to receive and the defendant’s obligation is to pay, as damages, 
just what the State chooses to prescribe.

 
Id. (emphasis added).
        In 
examining each side’s arguments regarding whether section 157.265 involves a 
vested right, we return to Abell’s discussion of such rights:
 
[A] right, in a legal sense, 
exists, when, in consequence of the existence of given facts, the law declares 
that one person is entitled to enforce against another a given claim, or to 
resist the enforcement of a claim urged by another.  Facts may exist out of 
which, in the course of time or under given circumstances, a right would become 
fixed or vested by operation of existing law, but until the state of facts which 
the law declares shall give a right comes into existence there cannot be in law 
a right; and for this reason it has been constantly held that, until the right 
becomes fixed or vested, it is lawful for the lawmaking power to declare that 
the given state of facts shall not fix it, and such laws have been constantly 
held not to be retroactive in the sense in which that term is used.
 
 
613 S.W.2d at 261 (quoting Mellinger 
v. City of Houston, 68 Tex. 37, 3 S.W. 249, 253 (1887)). Further,
 
A right cannot be considered a 
vested right, unless it is something more than such a mere expectation as may be 
based upon an anticipated continuance of the present general laws; it must have 
become a title, legal or equitable, to the present or future enjoyment of a 
demand or legal exemption from the demand made by another.
 
 
Id. Abell, 613 
S.W.2d at 261, also relied on City of Dallas v. Trammell, which held 
that, for a right to be constitutionally protected, “[i]t must be something 
more than a mere expectancy based upon an anticipated continuance of an existing 
law.” 129 Tex. 150, 101 S.W.2d 1009, 1014 (1937).
        Applying 
Abell to the issue at hand, we initially observe that the supreme court 
has recognized two legal sources for an award of prejudgment interest: (1) 
general principles of equity and (2) an enabling statute. Johnson & 
Higgins, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 530 (Tex. 1998). 
Section 157.265 is the enabling statute for prejudgment interest accruing on 
delinquent child support and is included in a chapter of the family code 
providing enforcement mechanisms for child support. See Tex. Fam. Code. Ann. § 157.265. We 
agree with W.G.S. that section 157.265 governs “the rate and manner in 
which interest applies to child support arrearages” and, therefore, is part of 
the remedial scheme in the family code designed to encourage child support 
obligors to make child support payments in a timely fashion. 107 S.W.3d at 630.
        Unpaid 
child support can be reduced to judgment and enforced as a debt, but it is 
“more properly characterized as an unfulfilled duty . . . to the custodial 
parent.” Patton, 821 S.W.2d at 145. For parents who fail to fulfill 
their duty of support, the legislature has enacted provisions, such as section 
157.265, that outline the consequences of such a failure. W.G.S., 107 
S.W.3d at 630. While section 157.261(a) states that “[a] child support payment 
not timely made constitutes a final judgment for the amount due and owing, 
including interest as provided in this chapter,” section 157.265 does not 
define or regulate an obligee’s right to collect child support arrearages, but 
affects only the measure of damages—the rate of prejudgment 
interest—applicable in the enforcement of the obligee’s right to such 
arrearages. See Tex. Fam. Code Ann. 
§§ 157.261(a), 157.265; A.D., 73 S.W.3d at 248; see also Natural Gas 
Clearinghouse v. Midgard Energy Co., 113 S.W.3d 400, 414 n.13 (Tex. 
App.—Amarillo 2003, pet. denied) (observing that “statutes relating to 
damages are remedial” and that prejudgment interest “is simply a form of 
damages”); John J. Sampson et al., 
supra § 157, Introductory Cmt., 677 (stating that the child support 
interest provision is “another remedy [in] the ever-growing arsenal for 
enforcement of child support orders”).
        A 
parent owed delinquent child support but who has not had it confirmed and 
reduced to a cumulative money judgment thus has only an expectancy that a 
particular type and rate of prejudgment interest will apply to delinquent child 
support payments. See Abell, 613 S.W.2d at 261; Trammell, 
129 Tex. 150, 101 S.W.2d at 1014. Indeed, as described above, the legislature 
has amended the child support interest provision four times since it was first 
enacted in 1991, changing the amounts and methods of calculating such interest. W.G.S. 
noted that “[t]he 1993 amendment, which raise[d] the statutory interest rate 
from ten percent to twelve percent, ‘reaches back’ and applies to arrears 
dues and owing on September 1, 1991.” 107 S.W.3d at 629 (citing Act of May 15, 
1993, 73rd Leg., R.S., ch. 150 §§ 1, 3, 1993 Tex. Gen. Laws 302, 
302 (amended 1995, 1999, & 2001) (current version at Tex. Fam. Code Ann. § 157.265)). 
Likewise, we think the language of the 2001 amendment reaches back and applies 
to unconfirmed child support arrearages existing before January 1, 2002 that are 
confirmed and reduced to a money judgment on or after that date. See Tex. Fam. Code Ann. § 157.265 
historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 
3(b)(2), 2001 Tex. Gen. Laws 5294, 5295].
        After 
a thorough examination of the statute and the purposes underlying it, we reject A.B.L.’s 
and Hurd’s conclusion that a retroactive application of section 157.265 
would violate a vested right. Rather, we hold that a retroactive construction of 
section 157.265 does not offend article I, section 16 of the Texas Constitution 
because section 157.265 is a legislatively-created tool for the enforcement of 
child support orders. See Tex. 
Const. art. I, § 16; A.D., 73 S.W.3d at 248.
                3.     Foolish 
& Absurd Results?
        Finally, 
the OAG points out that because the legislature has chosen for Texas to 
participate in the federal Social Security Title IV-A and Title IV-D programs, 
Texas must comply with federal law providing that
 
any payment or installment of 
[ordered child] support . . . is (on and after the date it is due) a judgment by 
operation of law with the full force, effect, and attributes of a judgment of 
the State, including the ability to be enforced . . . and not subject to 
retroactive modification by such State and in any other State.
 
 
42 U.S.C. § 666(a)(9) (West 
Supp. 2004). According to the OAG, a retroactive construction of section 157.265 
could cause Texas to be out of compliance with federal law. The OAG argues that 
“nothing indicates the legislature contemplated, much less intended, to risk 
the loss of federal funding for Texas’s public assistance and child 
enforcement programs simply by lowering the interest rate on unconfirmed 
delinquent arrears.” The OAG states, “To construe this interest rate change 
by inferring a retroactive application that poses this risk is unreasonable and 
should be rejected.”
        We 
presume the legislature intended a just and reasonable result in enacting a 
statute. Tex. Gov’t Code Ann. § 
311.021(3). We will not construe a statute in a manner that will lead to a 
foolish or absurd result when another alternative is available. City of 
Roanoke v. Town of Westlake, 111 S.W.3d 617, 636 (Tex. App.—Fort Worth 
2003, pet. denied).
        As 
mentioned above, section 157.261(a) states that “[a] child support payment not 
timely made constitutes a final judgment for the amount due and owing, including 
interest,” and section 157.262(a) directs that “in rendering a money 
judgment, the court may not reduce or modify the amount of child support 
arrearages.” Tex. Fam. Code Ann. 
§§ 157.261(a), 157.262(a). These two provisions are incorporated into the 
Texas Family Code to ensure compliance with federal law. We agree with the OAG 
that nothing in the 2001 amendment to section 157.265 indicates a legislative 
intent to opt out of the above-listed federal programs, but we do not believe 
that a retrospective application of section 157.265’s prejudgment interest 
provision violates the express language in title 42, section 666(a)(9) of the 
United States Code. 42 U.S.C. § 666(a)(9). The federal statute itself does not 
speak to or even mention how interest is to be treated, and section 157.265 
merely expresses the legislature’s intent to apply a different rate of 
prejudgment interest to delinquent child support payments.
VI. Conclusion
        We 
hold that, by amending section 157.265, the legislature intended for the six 
percent rate to apply to “unpaid child support that became due before 
[January 1, 2002] and for which a court has not confirmed the amount of 
arrearages and rendered a money judgment,” and we, like the trial court, 
will effectuate that intent. See Tex. 
Fam. Code Ann. § 157.265 historical note [Act of May 18, 2001, 77th 
Leg., R.S., ch. 1491, § 3(b), 2001 Tex. Gen. Laws 5294, 5295] (emphases added); 
McIntyre, 109 S.W.3d at 748. Having addressed each of the OAG’s 
arguments, we overrule its sole issue and affirm the trial court’s judgment.
 
 
                                                          ANNE 
GARDNER
                                                          JUSTICE
   
 
PANEL A:   CAYCE, 
C.J.; GARDNER and MCCOY, JJ.
DELIVERED: July 22, 2004

 
NOTES
1.  
In the 1995 regular session, the legislature repealed section 14.34. Act of 
April 20, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 
113, 282.
2.  
We also note that three bills to amend section 157.265 were introduced during 
the 2003 Regular Session, but none were enacted. See Tex. S.B 1294, 78th 
Leg., R.S. (2003) (seeking to raise interest rate from six to nine percent); 
Tex. H.B. 312, 78th Leg., R.S. (2003) (same); Tex. H.B. 1067, 78th 
Leg., R.S. (2003) (seeking to clarify effective date of 2001 amendments).
3.  
A.B.L. and Hurd both disagreed with A.R.J.’s 
interpretation of section 157.265, but all three courts reached the same result.